IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Court Judge Richard P. Matsch

Civil Action No. 08-cv-02584-RPM

SICANGU WICOTI AWANYAKAPI CORPORATION,
OGLALA SIOUX (LAKOTA) HOUSING,
TURTLE MOUNTAIN HOUSING AUTHORITY,
WINNEBAGO HOUSING AND DEVELOPMENT COMMISSION,
LOWER BRULE HOUSING AUTHORITY,
SPIRIT LAKE HOUSING CORPORATION, and
TRENTON INDIAN HOUSING AUTHORITY,

       Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT;
SHAUN DONOVAN, Secretary of Housing and Urban Development;
DEBORAH A. HERNANDEZ, General Deputy Assistant Secretary for Public and Indian
Housing; and
GLENDA GREEN, Director, Office of Grants Management, Office of Native
American Programs,

       Defendants.

---

ORDER ON DISPUTED ISSUES AND FOR SUPPLEMENTAL BRIEFING

---

       The Plaintiffs in this action are seven tribal housing entities.  They filed this action on

November 26, 2008, seeking judicial review under the Administrative Procedure Act, 5 U.S.C.

§ 701 et seq., claiming that the Defendants (collectively "HUD") violated the Native American

Housing Assistance and Self-Determination Act of 1996 ("NAHASDA"), 25 U.S.C. § 4101 et

seq., by reducing the number of housing units counted as Formula Current Assisted Stock

("FCAS") for the calculation of each Plaintiffs' allocation of the annual Indian Housing Block

Grant ("IHBG") and recapturing grant funds that HUD had awarded to the Plaintiffs in past years.

The Plaintiffs filed an amended complaint on January 8, 2009, and an amended/supplemental complaint for declaratory and injunctive relief on September 7, 2010. The Administrative Record was filed on August 17, 2010.

Jurisdiction is provided by the APA and by 28 U.S.C. §§ 1331, 1346 and 1362.  The Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. § 2201, and jurisdiction to grant injunctive relief pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 2202.

This action is governed by the version of NAHASDA that existed before it was amended by the Native American Housing Assistance and Self-Determination Reauthorization Act of 2008, Pub. L. No. 110-411, 122 Stat. 4319 (2008).  Legal issues common to this action and related actions were determined in two previous memorandum opinions and orders in *Fort Peck Housing Authority v. HUD et al.*, Civil Action No. 05-cv-00018-RPM, dated August 31, 2012, and March 7, 2014.

The order dated March 7, 2014 required the Plaintiffs in the coordinated actions to submit  proposed forms of judgment, specifying the amounts to be paid to each tribe or tribal housing entity and the asserted sources of payment.  On March 26, 2014, HUD moved for the establishment of scheduling orders, requesting additional briefing before entry of any final judgments.

On April 15, 2014, these seven Plaintiffs submitted a combined proposed judgment and a response to HUD's motion.  Those filings show that the Plaintiffs are seeking only the restoration of recaptured funds and injunctive relief with respect to threatened recaptures.  The Plaintiffs identified the challenged agency actions, the amount of monetary relief claimed by each Plaintiff, the requested injunctive relief, and the legal basis for the requested relief.  It is assumed that the Plaintiffs have abandoned claims to any form of relief not identified in their proposed judgment.

In a reply, HUD stated that because the Plaintiffs have identified the challenged agency actions and narrowed the scope of requested relief , no further briefing by HUD is necessary.

In Section III of its reply, HUD addressed the monetary relief requested by each of these Plaintiffs.  HUD argues that certain of the Plaintiffs' claims are barred in whole or in part by the six-year statute of limitations, 28 U.S.C. § 2401(a).  HUD asserts that the timeliness of the Plaintiffs' claims should be measured from the date when HUD notified a Tribe of HUD's decision to recapture grant overfunding.  The Plaintiffs, on the other hand, contend that their claims accrue from the date of the challenged recaptures.

For an action seeking judicial review under the APA, "[t]he right of action first accrues on the date of the final agency action."  *Harris v. FAA*, 353 F.3d 1006, 1009-10 (D.C. Cir. 2004).  In general, two conditions must be satisfied for agency action to be final:  "First, the action must mark the consummation of the agency's decisionmaking process .... And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations and quotations omitted).  "[C]ases dealing with judicial review of administrative actions have interpreted the 'finality'

element in a pragmatic way." *Abbott Labs. v. Gardner*, 387 U.S.136, 149 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).

HUD urges this court to follow *Otoe-Missouria Tribe of Oklahoma v. HUD*, No. CIV-08-01297-F (W.D. Okla. Feb. 13, 2014). In that case the United States District Court for the Western District of Oklahoma held that the APA statute of limitations precluded the plaintiff's entire claim, finding that the limitations period accrued from the date when the Tribe knew the total amount it would have to repay. *Otoe-Missouria* is not binding authority, and this court declines to apply it to the facts presented by this Administrative Record.

In *Lummi Tribe of Lummi Reservation v. United States*, 99 Fed.Cl. 584 (2011), the United States Court of Federal Claims measured the timeliness of the plaintiffs' claims from when HUD recaptured the alleged overfunding. The Court of Federal Claims explained:

> Although plaintiffs' cause of action with respect to fiscal years 1998 through 2002 accrued when HUD began its recapture of those funds in 2002, *their cause of action with respect to any subsequent fiscal year did not accrue until plaintiffs received grant funds in that year in an amount less than that to which they allegedly were entitled.* Plaintiffs may therefore pursue claims for fiscal years 2003 through 2008 as those claims did not accrue until plaintiffs suffered damage in those fiscal years.

99 Fed. Cl. at 606, n.20 (emphasis added).

That reasoning is apt. As shown by the discussion below, the challenged recaptures occurred after an exchange of correspondence between HUD and the Tribe, and HUD's determinations about alleged overfunding frequently were moving targets, subject to revision.[1] The administrative process that HUD employed was so fluid and ill-defined that HUD's

---

[1]*See also Navajo Housing Authority v. HUD et al.*, Civil Action No. 08-cv-00826-RPM, AR Vol. 3, Tab 80 at AR001331 (HUD letter dated January 11, 2008, stating "In reviewing our letter dated April 28, 2006, we discovered errors.")

-4-

determinations could not be considered final until HUD actually effected recapture.  HUD's violation of its statutory obligations occurred when it recaptured IHBG funds illegally, not when it requested repayment of alleged grant overfunding. The accrual date is the date of recapture.

In Section III of its reply, HUD also argues that the Plaintiffs have not shown prejudice from the lack of an administrative hearing, asserting that the Plaintiffs cannot demonstrate that they actually still owned and operated all of the units that HUD determined were overpaid.  As an example, HUD shows that Plaintiff Sicangu Wicoti Awanyakapi Corporation ("SWA Corp.") challenges HUD's recapture of $873,760 that HUD had awarded mistakenly to that Tribe in fiscal years 1998 through 2003 for 40 low rent units that did not exist.  (HUD's reply [#78] at pp. 8-9).  HUD also states that recapture decisions challenged by Plaintiffs Oglala Sioux (Lakota) Housing ("Oglala Sioux"), Turtle Mountain Housing Authority ("Turtle Mountain"), Trenton Indian Housing Authority ("Trenton"), Lower Brule Housing Authority ("Lower Brule") and Spirit Lake Housing Authority ("Spirit Lake") were based in part on those Tribes' representations to HUD regarding units that had been conveyed, and that a recapture challenged by Plaintiff Winnebago Housing and Development Commission ("Winnebago") was based on that Tribe's report about units that were never constructed.  (HUD's reply [#78] at pp. 8-9).  That is, HUD argues that to the extent that HUD's recaptures of grant overfunding were based on the disqualification of units that the Tribes acknowledged that they did not own or operate during the relevant fiscal years, the Plaintiffs have not been prejudiced by the lack of a hearing.

The Plaintiffs moved to strike that section of HUD's reply, arguing that HUD's arguments about prejudice have been rejected by this Court.

HUD's response to the Plaintiffs' motion to strike raises valid questions about whether the Plaintiffs are entitled to all of the monetary relief they seek.  The Plaintiffs have not addressed whether some of the challenged recaptures were recoveries of grant overfunding for units that the Tribes acknowledged did not exist or had been conveyed before the relevant time period.  Supplemental briefing by the Plaintiffs is necessary to address those factual matters and any additional legal support for the Plaintiffs' claims for restoration of recaptured funds.  Review of the challenged agency actions also raises questions about whether some of these Plaintiffs have requested restoration of more funds than HUD actually recaptured from them.

The agency actions challenged by each of the seven Plaintiffs are described below.

<u>Plaintiff Sicangu Wicoti Awanyakapi Corporation</u>

In a letter dated November 14, 2002, HUD notified SWA Corp. that the Tribe had received grant overfunding in the estimated amount of $12,623 because two housing units included in the Tribe's FCAS during FYs 2000 through 2000 should not have been credited to the Tribe.  HUD's letter stated that HUD would  need to adjust the Tribe's FY 2003 allocation to reflect the over-funding received for those units and suggested that the Tribe could contact HUD to discuss repayment options.[2]

In a letter dated February 27, 2004, HUD notified SWA Corp. of revisions to the Tribe's housing inventory.  Among other things, that letter informed SWA Corp. that the Tribe had "incorrectly received funding for 40 [Low Rent] units in FY 1998 through FY 2003" and estimated the over-funding for those units to be approximately $873,760.  HUD's letter stated, "We will work with the Tribe to find a suitable way to structure repayment."

---

[2]SWA Administrative Record ("AR") Vol. 2, Tab 29 at SWAC000081-82

In a letter dated May 17, 2004, HUD upheld the agency's determination to require the Tribe to repay the $873,760.[3]

In a letter dated August 17, 2004, HUD informed SWA Corp. that HUD had established a five-year repayment plan to recapture $873,760 and according to that schedule would deduct $174,252 from SWA Corp.'s IHBG allocations in each of the grant years from FY 2005 through FY 2009.[4]

In a letter dated October 12, 2005, HUD demanded repayment of the additional sum of $405,540 for housing units included in SWA Corp.'s FCAS during FYs 1998 to FY 2005 that HUD contends should not have been included.[5]

To recapture alleged grant overfunding, HUD deducted $174,752 from SWA Corp.'s FY 2005 grant allocation; $580,292 from the Tribe's FY 2006 grant allocation; $174,752 from the Tribe's FY 2007 grant allocation, and $174,752 from the Tribe's FY 2008 grant allocation.[6]

The Plaintiffs' proposed judgment requests monetary relief in the amount of $1,117,171 on behalf of SWA Corp.

HUD argues that the SWA Corp. cannot show that it is entitled to more than $1,104,548, asserting that application of the six-year statute of limitation reduces SWA Corp.'s claim by $12,623.

---

[3]AR Vol. 2, Tab 41 at SWAC000120-22.

[4]AR Vol. 2, Tab 44 at SWAC000132.

[5]AR Vol. 2, Tab 52 at SWAC000159-63.

[6]AR Vol. 2, Tab 46 at SWAC000133-136; Tab 54 at SWAC000164-67; Tab 60 at SWAC000179-183, and Tab 64 at SWAC000196-200.

As discussed above, the claim accrues from the date of recapture.  According to the Plaintiffs' response and the evidence in the Administrative Record, SWA Corp. first suffered a recapture in FY 2005.  SWA Corp.'s claim for restoration is not precluded in whole or in part by the statute of limitations.  However, it appears that the total amount actually recaptured from SWA Corp. did not exceed $1,104,548.  The Plaintiffs' supplemental brief should address the record support for SWA Corp.'s claim that it is entitled to restoration in the amount of $1,117,171.  The Plaintiffs' supplemental brief should also address whether and to what extent recaptures challenged by SWA Corp. were repayments of grant funds the Tribe had received for units that did not exist or units that the Tribe acknowledged had been conveyed before the relevant fiscal year.

The Administrative Record also shows that on January 22, 2009 and June 2, 2009, HUD demanded repayment of the additional sums of $31,556 and $59,401 for housing units that SWA Corp. had included in its FCAS for FYs 2006 through 2008, that HUD contends were not eligible for FCAS funding.[7]  SWA Corp. states that HUD has not acted on the threatened recaptures because HUD agreed to suspend recaptures during the pendency of this case.  SWA Corp. further states that HUD has not withdrawn its demands for repayment of those amounts.

With respect to grant funding for FYs 1997 through and including 2008, SWA Corp. is entitled to injunctive relief prohibiting the Defendants from threatening or implementing any recapture or acting upon any threatened recapture without first complying with the requirements of Section 401(a) of the NAHASDA [25 U.S.C. § 4161(a)] as that subsection existed prior to the effective date of Public Law 110-411.

---

[7]AR Vol. 2, Tab 71 at SWAC000221-24 and Vol. 2, Tab 75 at SWAC000234-38.

Plaintiff Oglala Sioux (Lakota) Housing

In letters dated March 11, 2002, June 6, 2002 and July 26, 2002, HUD notified Oglala Sioux (Lakota) Housing ("Oglala Sioux") that the Tribe may have incorrectly received credit in fiscal years 2001 and 2002 for 35 mutual help units under the FCAS component of the IHBG formula.[8]  HUD's letter dated July 26, 2002 informed the Tribe that HUD intended to deduct the amount of $160,443 from the Tribe's FY 2003 IHBG allocation as repayment for those units.[9]

In a letter dated April 9, 2004, HUD stated that the amount of $18,974 would be deducted from the Oglala Sioux's grant for FY 2004 as repayment for ineligible housing units the Tribe had included in its FCAS for FYs 1998 through 2003.[10]

HUD deducted $18,974 from Oglala Sioux's FY 2005 IHBG allocation as repayment for alleged grant overfunding.[11]

In a letter dated November 17, 2006, HUD notified Oglala Sioux that it may have incorrectly received credit in FYs 2005 and 2006 for mutual help units under the FCAS component of the IHBG formula in one or more fiscal years.  HUD's letter requested that the Tribe repay the sum of  $474,636 for those units, and proposed as a method of repayment that the Tribe's FY 2007 allocation be adjusted.[12]

---

[8]AR Vol. 3, Tab 25 at OSLH000080-81; Tab 26 at OSLH00082-83; Tab 27 at 0000OSLH84-85.

[9]AR Vol. 3, Tab 27 at OSLH000084-85.

[10]AR, Vol. 3, Tab 41 at OSLH000137.

[11]AR Vol. 3, Tab 49 at OSLH000153-56 ("Oglala Sioux FY 2005 Indian Housing Block Grant Allocation & Formula Data").

[12]AR Vol. 3, Tab 58 at OSLH000184-85.

HUD deducted $474,636 from Oglala Sioux's FY 2007 IHBG allocation as repayment for alleged grant overfunding.[13]

The Plaintiffs' proposed judgment requests monetary relief in the amount of $654,053 on behalf of Oglala Sioux.

HUD argues that Oglala Sioux cannot show that it is entitled to more than $493,610, asserting that application of the six-year statute of limitation reduces Olgala Sioux's claim by $160,443.

According to the Plaintiffs' response and the evidence in the Administrative Record, the first recapture suffered by Oglala Sioux occurred in FY 2005.  Oglala Sioux's claim for restoration is not precluded in whole or in part by the statute of limitations.  However, it appears that the total amount actually recaptured from Oglala Sioux did not exceed  $493,610.  The Plaintiffs' supplemental brief should address the record support for Oglala Sioux's claim that it is entitled to restoration in the amount of $654,053.  The Plaintiffs' supplemental brief should also address whether and to what extent recaptures challenged by Oglala Sioux were repayments of grant funds the Tribe had received for units that it acknowledged had been conveyed before the relevant fiscal year.

The Administrative Record also shows that in a letter dated January 22, 2009, HUD demanded that Oglala Sioux repay the additional sum of $128,057 for housing units included in the Tribe's FCAS for FYs 2007 and 2008 that HUD contends should not have been included.[14] Oglala Sioux states that HUD has threatened to deduct that amount from the Tribe's FY 2010

---

[13]AR Vol. 3, Tab 60 at OSLH000186- 90 (FY 2007 Allocation).

[14]AR Vol. 3, Tab 70 at OSLH000226-27.

grant but did not do so because HUD agreed to suspend further recaptures during the pendency

of this case.  According to Oglala Sioux, HUD has not withdrawn its demand for repayment of

$128,057.

Oglala Sioux is entitled to injunctive relief with respect to the threatened recapture.

Plaintiffs Turtle Mountain Housing Authority and Trenton Indian Housing Authority

The agency actions challenged by Turtle Mountain Housing Authority ("Turtle

Mountain") and Trenton Indian Housing Authority ("Trenton") are intertwined because Trenton

receives its annual IHBG funding under Turtle Mountain's grant allocation.

In a letter dated June 25, 2001, HUD informed Turtle Mountain that it had received grant

overfunding in the estimated amount of $1,554,593 for housing units included in Turtle

Mountain's FCAS during FYs 1998 through 2001 that HUD considered ineligible for FCAS

funding.[15]

In a letter dated March 11, 2002, HUD notified Turtle Mountain that HUD would adjust

the Turtle Mountain's FY 2003 grant allocation to reflect FY 2002 corrections, including grant

overfunding in the amount of $221,731 for revisions to the Tribe's FCAS for the years 1998

through 2001.[16]

In a letter dated March 28, 2002, HUD notified Turtle Mountain that HUD would recover

the amount of $1,554,593 from Turtle Mountain by adjusting the Tribe's grant allocations over a

---

[15]AR, Vol. 4, Tab 29 at TMHA000121-22.

[16]AR Vol. 4, Tab 37 at TMHA000152-56.

five-year period from FY 2003 through 2007 and deducting $310,919 from Turtle Mountain's allocation in each of those years.[17]

In letters dated June 3, 2002 and July 24, 2002, HUD notified Turtle Mountain (as the grant recipient for Trenton) that Trenton had received grant overfunding in the estimated amount of $413,408 for housing units included in Trenton's FCAS during FYs 1998 through 2002 that HUD considered ineligible for FCAS funding.[18]  HUD's letter dated July 24, 2002 stated that HUD would recover the amount of $413,408 by adjusting Trenton's grant allocations for the five-year period from FY 2003 through 2007 and deducting $82,682 from Trenton's IHBG allocation in each of those years.

In FYs 2003, 2004, and 2005, HUD deducted $393,601 from Turtle Mountain's grant allocations.[19]  Each of those deductions apparently represented a recapture of $310,919 from Turtle Mountain (according to the March 25, 2002 repayment schedule) and a recapture of $82,682 from Trenton (according to the July 24, 2002 repayment schedule).

In a letter dated December 17, 2004, HUD notified Turtle Mountain of revisions to the Tribe's FCAS for FYs 2004 and 2005 and stated that Turtle Mountain had incorrectly received funding in FY 2004 in the estimated amount of  $7,009.  HUD's letter stated that HUD would need to adjust the Turtle Mountain's FY 2005 allocation to reflect the overfunding of $7,009.[20]

---

[17]AR Vol. 4, Tab 39 at TMHA000158-59.

[18]AR, Vol. 4, Tab 41 at TMHA000163-65 (HUD letter dated June 3, 2002) and AR Vol. 4, Tab 43 at TMHA000167-68 (HUD letter dated July 24, 2002).

[19]AR Vol. 4, Tab 47 at TMHA000176-79 (Turtle Mountain FY 2003 IHBG Allocation & Formula Data); Vol 4, Tab 55 at TMHA000204-07 (FY 2004 Allocation); Vol. 5, Tab 67 at TMHA000247-50 (FY 2005 Allocation).

[20]AR Vol. 4, Tab 65 at TMHA000236-37.

In a letter dated July 7, 2005, HUD notified Turtle Mountain of revisions to the Tribe's FCAS and stated that Turtle Mountain had incorrectly received funding in FYs 2003 through 2005 in the estimated amount of $7,042.  HUD's letter stated that HUD would need to adjust the Turtle Mountain's FY 2006 allocation to reflect the overfunding of $7,042.[21]

HUD deducted $400,608 from Turtle Mountain's FY 2006 IHBG allocation (which apparently included recapture of $82,682 from Trenton pursuant to the July 24, 2002 five-year repayment plan for Trenton).[22]  HUD deducted $393,599 from Turtle Mountain's FY 2007 IHBG allocation (which apparently included recapture of $82,682 from Trenton).[23]

The Plaintiffs' proposed judgment requests monetary relief in the amount of $413,408 on behalf of Trenton and $1,790,375 on behalf of Turtle Mountain.

HUD contends that Trenton's entire claim is barred by the six-year statute of limitations.

According to the Plaintiffs' response and the Administrative Record, the first recapture suffered by Trenton occurred in FY 2003.  Trenton's claim for restoration of recaptured funds in the amount of $413,408 is not time-barred.  However, the Plaintiffs' supplemental brief should address whether and to what extent recaptures challenged by Trenton were repayments of grant funds the Tribe had received for units it acknowledged had been conveyed.

HUD also argues that Turtle Mountain cannot show entitlement to more than $14,051, asserting that application of the six-year statute of limitations reduces Turtle Mountain's claim by $1,776,324.

---

[21]AR Vol. 5, Tab 70 at TMHA000263-65.

[22]AR Vol. 5, Tab 84 at TMHA000294 (FY 2006 Allocation).

[23]AR Vol. 5, Tab 102 at TMHA000327 (FY 2007 Allocation).

According to the Plaintiffs' response and the Administrative Record, the first recapture suffered by Turtle Mountain occurred in FY 2003.  Turtle Mountain's claim for restoration is not precluded in whole or in part by the statute of limitations.  However, Turtle Mountain has not established that the total of the recaptures suffered by Turtle Mountain amounted to $1,790,375.  The Plaintiffs' supplemental brief should address the record support for Turtle Mountain's claim to that amount. The Plaintiffs' supplemental brief should also address whether and to what extent recaptures challenged by Turtle Mountain were repayments of grant funds the Tribe had received for units it acknowledged had been conveyed before the relevant fiscal year.

The Administrative Record also shows that in letters dated June 11, 2009 and September 4, 2009, HUD notified Turtle Mountain of corrections to the Tribe's FCAS and corresponding grant overfunding for FYs 2006 through FY 2008 in the amounts of $224,697 and $30,405.[24] Turtle Mountain states that HUD has not recaptured those amounts because HUD agreed to suspend further recaptures during the pendency of this case.  Turtle Mountain further states that HUD has not withdrawn its demand for recapture of these additional amounts ($224,697 and $30,405).[25]

Turtle Mountain is entitled to injunctive relief with respect to the threatened recaptures.

---

[24]AR Vol. 5, Tab 131 at TMHA000403-05 and Tab 137 at TMHA000448-53.

[25]HUD's letters dated June 11, 2009 and September 24, 2009 also informed Turtle Mountain of revisions to Turtle Mountain's FCAS for FY 2009 and corresponding funding adjustments to the Tribe's FY 2009 grant allocation. Grant awards made for FY 2009 and subsequent years are governed by the amended version of NAHASDA, and this Court's prior orders do not address them.

Plaintiff Winnebago Housing and Development Commission

In a letter dated February 13, 2004, HUD notified Winnebago that the Tribe had received grant overfunding in the amount of $18,143 for housing units included Winnebago's FCAS in FYs 2000 through 2003 that HUD considered ineligible.[26]  HUD's letter stated that it would adjust Winnebago's FY 2004 grant allocation to recover these funds.

In letters dated April 15, 2004 and July 24, 2004, HUD notified Winnebago that the Tribe had incorrectly received FCAS funding in FYs 1998 through 2002 for units that had not been constructed, and HUD's calculation of the total grant overfunding for those units was $251,847.[27]  HUD's letter dated July 24, 2004 stated that HUD would implement a five-year repayment plan for the repayment of $251,847 and according to that schedule would deduct $50,369 from the Tribe's IHBG allocation grant allocations in FYs 2006 to 2008 and would deduct $50,370 in FYs 2009 and 2010.[28]

In FYs 2006, 2007 and 2008, HUD deducted $50,369 from Winnebago's grant allocations as repayment for grant overfunding.[29] HUD suspended recaptures after the Plaintiffs filed this action.

The Plaintiffs' proposed judgment requests monetary relief in the amount of $169,250 on behalf of Winnebago.

---

[26]AR Vol. 6, Tab 34 at WHDC000105-07.

[27]AR Vol. 6, Tab 35 at WHDC000108-09; AR Vol. 6, Tab 39 at WHDC000114-16.

[28]AR Vol. 6, Tab 39 at WHDC000114-16.

[29]AR Vol. 6, Tab 47 at WHDC000138-41 (Winnebago Tribe's FY 2006 Indian Housing Block Grant Allocation & Formula Data); AR Vol. 6, Tab 53 at WHDC000155-58 (FY 2007 Allocation); AR Vol. 6, Tab 59 at WHDC000176-79 (FY 2008 Allocation).

It appears that the total amount of recaptures actually suffered by Winnebago did not exceed $151,107.  The Plaintiffs' supplemental brief should address the record support for Winnebago's claim that it is entitled to restoration in the amount of $169,250.  The Plaintiffs' supplemental brief should also address whether and to what extent recaptures challenged by Winnebago were repayments of grant funds the Tribe had received for units it acknowledged were never constructed.

The Administrative Record also shows that in letters dated September 10, 2008 and December 1, 2008, HUD notified Winnebago of changes to the Tribe's FCAS and corresponding grant overfunding for FYs 2006 through 2008.  HUD's letter dated December 1, 2008 requested that the Tribe repay $51,937 for the overfunded units identified in those letters and proposed deducting that amount from the Tribe's FY 2009 grant allocation.[30]  Winnebago states that HUD has not recaptured the amounts referenced in HUD's letters dated September 10, 2008 and December 1, 2008, because HUD agreed to suspend recaptures during the pendency of this action. Winnebago further states that HUD has not withdrawn its demands for repayment.[31]

Winnebago is entitled to injunctive relief with respect to the threatened recaptures.

Plaintiff Lower Brule Housing Authority

In a letter dated June 20, 2002, HUD notified Lower Brule of adjustments to the Tribe's FCAS for fiscal years 1998 through 2003 and the elimination of housing units that HUD considered ineligible.  HUD's June 20, 2002 letter stated that the Tribe had received grant

---

[30]AR Vol. 6, Tab 63 at WHDC000194-95 and Tab 65 at WHDC000199-201.

[31]*See* HUD letter dated April 9, 2009, stating that HUD tolled repayment of $51,937 and will not require repayment of another $100,738 because of the pending litigation. AR Vol. 6, Tab 67 at WHDC000203.

overfunding for fiscal years 1998 through 2002 in the estimated amount of $372,442 and requested repayment.[32]

In a letter dated July 29, 2002, HUD notified Lower Brule that HUD had established a five-year schedule for repayment of the $372,442, and according to that schedule HUD would deduct $74,500 from the Tribe's IHBG allocation in each of the grant years from FY 2003 to FY 2006 and would deduct $74,442 from the Tribe's allocation in FY 2007.[33]

Beginning in FY 2003, HUD recaptured $372,442 from Lower Brule by taking deductions from the Tribe's annual IHBG allocations according to the five-year repayment schedule described in HUD's letter dated July 29, 2002.[34]

The Plaintiffs' proposed judgment requests monetary relief in the amount of $372,442 on behalf of Lower Brule.

HUD contends that Lower Brule's entire claim for monetary relief is barred by the six-year statute of limitations.

As set forth above, the first recapture suffered by Lower Brule occurred in FY 2003. Lower Brule's claim for restoration of recaptured funds is not time-barred.

The Plaintiffs' supplemental brief should address whether and to what extent recaptures

---

[32]AR Vol. 7, Tab 26 at LBHA000063-65.

[33]AR Vol. 7, Tab 28 at LBHA000068-70.

[34]AR Vol. 7, Tab 32 at LBHA000080-82 ("Lower Brule Sioux FY 2003 Indian Housing Block Grant Allocation & Formula Data"); AR Vol. 7, Tab 36 at LBHA000092-94 (FY 2004 Allocation); AR Vol. 7, Tab 40 at LBHA000104-06 (FY 2005 Allocation); AR Vol. 7, Tab 44 at LBHA000116-19 (FY 2006 Allocation); AR Vol. 7, Tab 48 at LBHA000129-32 (FY 2007 Allocation).

challenged by Lower Brule were repayments of grant funds the Tribe had received for units it acknowledged had been conveyed before the relevant fiscal year.

The Administrative Record also shows that in a letter dated January 21, 2009, HUD informed Lower Brule that the Tribe had received grant overfunding in the amount of $94,191 for housing units included in the Tribe's FCAS for FYs 2006 through FY 2008 that HUD contends were ineligible for FCAS funding.[35]  Lower Brule states that although HUD threatened to recapture that sum from the Tribe's FY 2009 IHBG allocation, HUD has not done so because HUD agreed to suspend further recaptures during the pendency of this case.  Lower Brule further states that HUD has not withdrawn its demand for recapture of that additional sum.

Lower Brule is entitled to injunctive relief with respect to the threatened recapture.

Plaintiff Spirit Lake Housing Corporation

In a letter dated November 6, 2002, HUD notified Spirit Lake that the Tribe had received grant ovefunding in the amount of $600,552 for housing units included in Spirit Lake's FCAS during fiscal years 1998 through 2002 that HUD considered ineligible for FCAS funding.[36]

In a letter dated May 23, 2003, HUD informed Spirit Lake that HUD had established a five-year schedule for the Tribe's repayment of $600,552 and according to that schedule HUD would deduct $120,110 from Spirit Lake's IHBG allocations in each grant year from FY 2004 through FY 2006 and would deduct $120,111 from the Tribe's allocations for FY 2007 and FY 2008.[37]

[35]AR Vol. 7, Tab 58 at LBHA000169-70.

[36]AR Vol. 8, Tab 31 at SLHC000076-78.

[37]AR Vol. 8, Tab 36 at SLHC000086-87.

In letters dated April 26, 2005, June 8, 2005, and August 15, 2005, HUD notified Spirit Lake that the Tribe had received grant overfunding in the amount of $449,466 for housing units included in the Tribe's FCAS during FYs 1998 through 2005 that HUD considered ineligible.[38] HUD's letter dated August 15, 2005 informed Spirit Lake that HUD had established a five-year schedule for the Tribe's repayment of $449,466 and according to that schedule HUD would deduct $89,894 from Spirit Lake's IHBG allocation for FY 2006 and would deduct $89,894 from the Tribe's grant allocations annually from FY 2007 through FY 2010.

Pursuant to the repayment schedule described in HUD's letter dated May 23, 2003, HUD deducted $120,110 from Spirit Lake's grant allocations for FY 2004 and FY 2005.[39]  Pursuant to the repayment schedules described in HUD's letters dated May 23, 2003 and August 15, 2005, HUD deducted $210,004 from Spirit Lake's allocations in each of the grant years from FY 2006 through 2008.[40]

The Plaintiffs' proposed judgment requests monetary relief in the amount of $870,232 on behalf of Spirit Lake.

HUD argues that application of the statute of limitations reduces Spirit Lake's claim by $600,552.  That argument fails.  According to the Plaintiffs' response and the Administrative Record, Spirit Lake suffered the first recapture in FY 2004.  Spirit Lake's claim for restoration of

---

[38]AR Vol. 8, Tab 48 at SLHC000123-25; AR Vol. 8, Tab 49 at SLHC000126-28, and AR Vol. 8, Tab 50 at SLHC000129-30.

[39]AR Vol. 8, Tab 40 at SLHC000097-99 ("Spirit Lake Sioux Tribe FY 2004 Indian Housing Block Grant Allocation & Formula Data");  AR Vol. 8, Tab 44 at SLHC000109-11 (FY 2005 Allocation).

[40]AR Vol. 8, Tab 54 at SLHC000140-43 (FY 2006 Allocation); AR Vol. 8, Tab 63 at SLHC000165-68 (FY 2007 Allocation), and AR Vol. 8, Tab 67 at SLHC000182-85 (FY 2008 Allocation).

funds recaptured in FYs 2004 through 2008 is not time-barred.  However, the Plaintiffs'

supplemental brief should address whether and to what extent recaptures challenged by Spirit

Lake were repayments of grant funds the Tribe had received for units it acknowledged had been

conveyed before the relevant fiscal year.

In a letter dated January 21, 2009, HUD agreed to suspend the recaptures scheduled for

FYs 2009 and 2010 during the pendency of this case.[41] Spirit Lake states that HUD has not

withdrawn its demand for repayment of those amounts.

Sprit Lake is entitled to injunctive relief with respect to the threatened recaptures.

 Accordingly, it is

ORDERED that the Plaintiffs' motion to strike [#79] is denied, and it is

FURTHER ORDERED that on or before July 31, 2014, the Plaintiffs shall file a

supplemental brief  address whether or to what extent the recaptures they challenge were

repayments of grant funds received for housing units the Tribes acknowledged did not exist or

had been conveyed before the relevant fiscal year.  The Plaintiffs' supplemental brief should also

address whether the monetary relief requested by Plaintiffs Sicangu Wicoti Awanyakapi

Corporation, Oglala Sioux (Lakota) Housing, Turtle Mountain Housing Authority and

Winnebago Housing and Development Commission exceeds the total amount of recaptures

actually suffered by those Tribes, as evidenced by the Administrative Record.

HUD may file a response to the Plaintiffs' supplemental brief on or before August 22,

2014.

---

[41]AR Vol. 8, Tab 74 at SLHC000216.

The briefing required by this order renders the Defendants' motion for scheduling order [#73] moot.

Date: July 10, 2014

BY THE COURT:

s/Richard P. Matsch

_____

Richard P. Matsch, Senior District Judge